UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDRE CAYO,<br>        *Plaintiff*,<br>        *v.*<br>DANIEL SEFCIK and ANTHONY GUILIANO,[1]<br>        *Defendants*. | Civil No. 3:14cv38 (JBA)<br><br>July 11, 2014 |

### RULING ON DEFENDANTS' MOTION TO DISMISS

Defendants Norwalk Police Officer Daniel Sefcik and State Trooper Anthony Guiliano move [Doc. ## 41, 44] to dismiss Plaintiff Andre Cayo's complaint alleging malicious prosecution arising out of his arrest and acquittal on allegations that he stalked a housing court mediator.  For the reasons that follow, Defendants' motions are granted.[2]

## I.    Allegations

Plaintiff's Second Amended Verified Complaint alleges that on November 12, 2010, Magalie Semexant-Coffy, a Mediation Specialist at the Superior Court Housing Session at Norwalk, gave a "false and unfounded"  "accusatory statement" to Norwalk Police Officer Daniel Sefcik in which she accused Mr. Cayo of stalking and harassing her for the prior six weeks by coming to the courthouse where she worked and staring at her and threatening the life and safety of her and her family and children.  (2d Am. Compl.

---

[1] Plaintiff refers to Defendants as "Sefceik" and "Giuliano," however, the correct spellings of their names are "Sefcik" and "Guiliano."  The Clerk is directed to amend the caption accordingly.

[2] The Court scheduled [Doc. # 60] oral argument on these motions for July 10, 2014, however, Plaintiff, an attorney proceeding pro se, did not appear and the Court elected to rule on these motions on the basis of the pleadings.  *See* Loc. Civ. R. 7(a) ("[T]he Judge may, in his or her discretion," rule on a motion without oral argument.).

[Doc. # 37] ¶¶ 1–2, 4, 6–7.)   Ms. Semexant-Coffy also reported that her sister-in-law, Chantal Coffy, told her that Mr. Cayo had said to her, "I am the last Haitian she is going to [f**k] with." (*Id.* ¶ 6.)  Mr. Cayo contends that all of Ms. Semexant-Coffy's allegations were false and "malicious" and made "in retaliation" for a complaint that Mr. Cayo filed against her after she served as a mediator in a landlord-tenant dispute in which Mr. Cayo assisted his uncle.[3] (*Id.* ¶ 8.)

As a result of Ms. Semexant-Coffy's allegations, on November 16, 2010, Defendant Sefcik "stormed into [Mr. Cayo's] apartment without a warrant, and announced he was 'looking for Andre, where's Andre?'" and asked him if he knew Ms. Semexant-Coffy. (*Id.* ¶ 9.)  Mr. Cayo identified himself and responded that he knew her from Norwalk housing court and Officer Sefcik replied, "I want you to stop going to the courthouse, and stalking and harassing her." (*Id.* ¶ 10.)  When Mr. Cayo tried to tell Officer Sefcik his side of the story, he stated "I don't care, I don't care." (*Id.* ¶ 12.)  Mr. Cayo told Officer Sefcik "to arrest him if he had a warrant, and the officer stated he was going to arrest the Plaintiff, and then left." (*Id.* ¶ 13.)  Later that day, Officer Sefcik took a statement from the Deputy Chief Clerk of the Housing Session at Norwalk, Edmond

---

[3] According to documents referenced in the complaint and provided by Defendant Guiliano, Ms. Semexant-Coffy mediated a case between Mr. Cayo's uncle and his tenant.  Mr. Cayo attempted to serve as his uncle's Creole translator, but Ms. Semexant-Coffy informed him that a court-provided interpreter was required and the proceeding would have to be adjourned.  Mr. Cayo then allegedly said to his uncle in Creole that he would pretend to be him during trial not realizing that Ms. Semexant-Coffy was a fluent Creole speaker and could understand him.  Ms. Semexant-Coffy told Mr. Cayo that she understood what he had said and that at trial he would have to prove he was the landlord.  (*See* Arrest Warrant Application, Ex. A to Guiliano's Mot. to Dismiss [Doc. # 48] at 2.)

O'Garro, who stated that Plaintiff had been in the courthouse on six occasions "stalking" Ms. Semexant-Coffy after his dispute with her during his uncle's proceeding. (*Id.* ¶ 15.)

Officer Sefcik sought an arrest warrant but was told by an assistant state's attorney that the case had to be transferred to the State Police because it involved a state-court employee. (*Id.* ¶ 16.) On November 18, 2010, State Trooper Anthony Guiliano himself took a statement from Ms. Semexant-Coffy "in which she reported that" Chantal Coffy "had told her that the Plaintiff said 'I am the last Haitian [Ms. Semexant-Coffy] [f**ked] with' and that she was so scared for her life and the life of her family that she had to send an email to the school . . . of her children to tell them not to let the kids out." (*Id.* ¶ 17.)

The following day, Trooper Guiliano applied for and received an arrest warrant on the basis of Ms. Semexant-Coffy's "false allegations . . . without corroborating the hearsay, second hand information given to him" and without giving Mr. Cayo "an opportunity to tell his version of events" even though he left several messages for Trooper Guiliano seeking to "disabuse[] him of Ms. Semexant-Coffy's false allegations." (*Id.* ¶¶ 18–20.)

Mr. Cayo alleges that Trooper Guiliano "failed to conduct any semblance of an investigation" and "did not have personal knowledge nor did he have trustworthy information of facts and circumstances that were sufficient to warrant a person of reasonable caution to believe that the Plaintiff had committed the crimes," because he did not interview Mr. Cayo or Chantal Coffy or verify whether she sent an email to her children's school expressing a safety concern and a "reasonable police officer would not

have relied on 'he said she said'" accusations in seeking an arrest warrant.[4]  (*Id.* ¶¶ 22–24.)
Further, Plaintiff contends that Trooper Guiliano "wrote his report in such a way that he
led the prosecutor and the judge to believe that he actually had first-hand knowledge of
the facts when he did not."  (*Id.* ¶ 25.)

As a result of Trooper Guiliano's investigation, Mr. Cayo was arrested on
November 21, 2010 and charged with stalking, harassment, threatening, and creating a
public disturbance.  (*Id.* ¶ 29.)  At Plaintiff's criminal trial, Ms. Semexant-Coffy "recanted
the entire contents of the statement she'd given to the police which led to the Plaintiff's
arrest, and testified that some of the statements attributed to her were made up by
Trooper [Guiliano]."  (*Id.* ¶ 42.)  The court granted Mr. Cayo a directed verdict on all
counts except for creating a public disturbance, which the jury later acquitted him of.  (*Id.*
¶¶ 46–47.)

As a result of the criminal charges against him, Plaintiff, who had recently
graduated from law school and passed the bar examination, was not able to gain

---

[4] Mr. Cayo attaches to the complaint a "Report of Investigation" into Ms.
Semexant-Coffy's allegedly false statements at trial.  It is not clear what agency conducted
this investigation, but citing the transcripts of Mr. Cayo's criminal trial, it states that
Chantal Coffy testified that she never had a conversation with her sister-in-law about Mr.
Cayo and Ms. Semexant-Coffy admitted during her cross examination that no such
conversation had occurred and claimed that the police were mistaken in writing out her
statement.  (Report of Investigation, Ex. C to 2d Am. Compl. at 3.)  Mr. Cayo also
submits an affidavit from Chantal Coffy denying that Mr. Cayo had made any threats or
that she told anyone that he had done so.  (*See* Ex. D to 2d Am. Compl.)  The trial also
revealed that Ms. Semexant-Coffy did not send an email to her children's school warning
of Mr. Cayo as she had claimed to the police.  (Report of Investigation at 3.)

admission to the bar until March 23, 2012, after his acquittal, whereas without the pending charges he would have been admitted fifteen months earlier.[5]  (*Id.* ¶¶ 51–53.)

## II.    Discussion[6]

### A.    Statute of Limitations

Both Defendants contend that all counts except for Counts One and Three for malicious prosecution should be dismissed as barred by the statute of limitations. Plaintiff initiated this action on January 10, 2014, over three years after his arrest in November 2010.  Plaintiff does not contest dismissal of these counts as to Trooper Guiliano.  (Pl.'s Opp'n to Guiliano [Doc. # 52-1] at 8.)  As to Officer Sefcik, Plaintiff states only that "[t]o the extent [he] made a claim of False Arrest under [§] 1983, it is

---

[5] Plaintiff asserts claims for malicious prosecution against Trooper Guiliano (Count One); "Violation of 42 U.S.C. [§] 1983" against Trooper Guiliano for violating his "right not to be arrested or prosecuted without probable cause" (Count Two); Malicious Prosecution against Officer Sefcik (Count Three); "Violation of 42 U.S.C. [§] 1983" against Officer Sefcik for violating his Fourth Amendment rights by unlawfully entering his home without a search warrant (Count Four); intentional and negligent infliction of emotional distress against Officer Sefcik (Counts Five and Six); negligent infliction of emotional distress against Trooper Guiliano (Count Seven); defamation against Trooper Guiliano (Count Eight) and Officer Sefcik (Count Nine); "false light" as to Trooper Guiliano (Count Ten) and Officer Sefcik (Count Eleven); and abuse of process as to Trooper Guiliano (Count Twelve) and Officer Sefcik (Count Thirteen).

[6] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Detailed allegations are not required but a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (alterations in original).

withdrawn" (Pl.'s Opp'n to Sefcik [Doc. # 50-1] at 7), however, he only addresses his claim for malicious prosecution in Count Three in his opposition to Officer Sefcik's Motion to Dismiss.  Thus to the extent that Plaintiff's additional claims against Officer Sefcik have not been withdrawn, they are deemed abandoned and dismissed.  *See Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed.").

Furthermore, these claims are barred by the applicable limitations periods. "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989).  All of the claims against Officer Sefcik except for Count Three are time barred, because they are subject to either a two- or three-year limitations period, but were not filed until over three years after Mr. Cayo's arrest.  *See Pinkston v. Connecticut*, No. 3:09cv633 (JCH), 2009 WL 2852907, at *2 (D. Conn. Sept. 2, 2009) ("The general three-year personal-injury statute of limitations period set forth in Connecticut General Statutes § 52–577 has been uniformly found to be the appropriate one for federal civil rights actions."); Conn. Gen. Stat. § 52-597 ("No action for libel or slander shall be brought but within two years from the date of the act complained of."); *Jensen v. Times Mirror Co.*, 634 F. Supp. 304, 315 (D. Conn. 1986) ("The false light claim thus is covered by § 52–577, the all-embracing tort statute of limitations" of three years.); *Rivera v. Double A Transp., Inc.*, 248 Conn. 21, 31 (1999) (two years for negligent infliction of emotional distress); *Watts v. Chittenden*, 301 Conn. 575, 596 (2011) ("[I]f no conduct has occurred within the three year limitations period set

forth in § 52–577, the plaintiff will be barred from recovering for . . . intentional infliction of emotional distress."); *Timbers v. Updike, Kelly & Spellacy, P.C.*, 83 Conn. App. 442, 446 (2004) (three years for abuse of process).[7]

### B.    Malicious Prosecution

Defendants move to dismissing the remaining malicious prosecution claims against them for failure to state a claim and qualified immunity as to Defendant Guiliano. The Connecticut Supreme Court has stated the elements of a malicious prosecution claim as follows:

> An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.

*Bhatia v. Debek,* 287 Conn. 397, 404 (2008) (quoting *McHale v. W.B.S. Corp.,* 187 Conn. 444, 447 (1982)).[8]

---

[7] Plaintiff's claims for malicious prosecution are not barred by the limitations period, because "for claims based in malicious prosecution, this period starts to run only when the underlying criminal action is conclusively terminated," not upon arrest. *Murphy v. Lynn,* 53 F.3d 547, 548 (2d Cir. 1995).

[8] Although Plaintiff does not specify whether his malicious prosecution claim is brought under state law or § 1983, the standards are the same for both claims. *See Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir. 2002) ("[I]n order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution claim under state law." (internal citations omitted)).

1.    *Officer Sefcik*

Defendant Sefcik contends that the complaint does not allege that he "initiated" or "procured" the institution of criminal charges; only that he attempted to obtain an arrest warrant and was rejected by the prosecutor.  (Sefcik's Mem. Supp. [Doc. # 41-1] at 11.) Plaintiff does not allege that Officer Sefcik was involved the arrest after his request for an arrest warrant was denied and acknowledges that Trooper Guiliano "took a new statement" from Ms. Semexant-Coffy and submitted a separate arrest warrant application, which was accompanied by her written statement.  (2d Am. Compl. ¶¶ 17–18.)  Plaintiff only conclusorily alleges that "Officer [Sefcik] initiated and procured the institution of criminal proceedings against" him (*id.* Count Three ¶ 63), and that Officer Sefcik "acted with malice, primarily for a purpose other than that of brin[g]ing the Plaintiff to justice when he decided not to investigate before applying for a warrant" and told Plaintiff he would obtain a warrant for his arrest (*id.* Count Three ¶ 68).

However, Officer Sefcik was ultimately unable to obtain such a warrant and referred the investigation to Trooper Guiliano.  As Plaintiff acknowledges, merely reporting information to an officer who ultimately makes an arrest does not constitute "initiation" of an arrest.  Plaintiff maintains, however, that because "Officer Sefcik is law enforcement" and "is not a regular witness[,] he clearly played an active role in the arrest of the Plaintiff" and his arrest would not have occurred without Officer Sefcik's actions. (Pl.'s Opp'n to Sefcik at 7–8.)

Although a "private person can be said to have initiated a criminal proceeding if he has insisted that the plaintiff should be prosecuted, that is, if he has brought pressure of any kind to bear upon the public officer's decision to commence the prosecution," he

"has not initiated a criminal proceeding if he has undertaken no more than to provide potentially incriminating information to a public officer.  In such a case, *if the defendant has made a full and truthful disclosure* and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution."  *Bhatia*, 287 Conn. at 407 (internal quotation marks omitted) (emphasis in original).  Here, Plaintiff has alleged only in conclusory terms that Officer Sefcik "initiated" his arrest, but has not plausibly alleged that Officer Sefcik insisted that Plaintiff be prosecuted or provided untruthful information to Trooper Guiliano when he took over the investigation.[9]  Accordingly, Officer Sefcik's Motion to Dismiss is granted.

### 2.   *Trooper Guiliano*

Defendant Guiliano does not dispute that Plaintiff has satisfied the first two elements of a malicious prosecution claim, but contends that Plaintiff has not plausibly alleged a claim because there was probable cause for his arrest.  Alternatively, Trooper Guiliano contends that he is entitled to qualified immunity, because he acted on the basis of an arrest warrant issued by a neutral magistrate.  Because the Court concludes that Defendant Guiliano is entitled to qualified immunity, it will not address his first argument.

"A defendant is entitled to qualified immunity on a motion to dismiss if the allegations of the complaint fail to 'state a claim of violation of clearly established law.'"

---

[9] Additionally, Plaintiff has pleaded no facts to plausibly allege that Officer Sefcik acted with malice and/or improper purpose rather than on the basis of the alleged victim's complaint "when he decided not to investigate before applying for a warrant" and told Plaintiff that he would obtain an arrest warrant.  (2d Am. Comp. Count Three ¶ 68.)

*Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998) (quoting *Behrens v. Pelletier,* 516 U.S. 299, 306 (1996)); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[B]ecause the entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (internal citations, quotation marks, and alterations omitted)).

"The qualified or 'good faith' immunity enjoyed by police officers shields them from personal liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)) (internal citations omitted). "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right," but an "arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.*

"Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden" and  "must make a 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the

allegedly false statement was 'necessary to the finding of probable cause.'" *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154 (1978)).   "A misrepresentation or omission is intentional when 'the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth.'" *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003) (quoting *United States v. Canfield,* 212 F.3d 713, 717–18 (2d Cir. 2000)).

Plaintiff contends that Trooper Guiliano "lied" in his Arrest Warrant Application when he stated that he spoke with Chantal Coffy about the threat Mr. Cayo allegedly made about Ms. Semexant-Coffy (2d Am. Compl. Count One ¶ 65), however, the application and attached statements make clear that in the relevant paragraph Trooper Guiliano is simply recounting Ms. Semexant-Coffy's account that "she said" that "she received a phone call from Chantal Coffy," who "stated that" Mr. Cayo had allegedly made the threatening comments.[10]   (Arrest Warrant Application at 2–3, 10.)

Additionally, Mr. Cayo contends that Trooper Guiliano lied in the Arrest Warrant Application by claiming that when he called Plaintiff, a man answered the phone, denied being Plaintiff and identified himself as Plaintiff's uncle.   Mr. Cayo contends that Trooper Guiliano falsely implied that Plaintiff himself had answered the phone and "pretended to be his uncle" and also lied when he stated that Plaintiff never returned Trooper Guiliano's

---

[10] The Court can consider the contents of the Arrest Warrant Application and its attachments because they are discussed extensively in the complaint.   *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[T]he court may . . . consider [a document on a motion to dismiss] where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotation marks omitted).

call. (2d Am. Compl. Count One ¶¶ 67–68.)  Even assuming *arguendo* that these allegations could be proven, they are not statements "necessary to the finding of probable cause" on any of the offenses charged against Mr. Cayo and therefore they do not impact the qualified immunity analysis. *Golino*, 950 F.2d at 870.

In his opposition to Trooper Guiliano's motion to dismiss, Plaintiff argues only that Trooper Guiliano was reckless for adopting Ms. Semexant-Coffy's account and that his criminal trial subsequently demonstrated that she was lying.  However, to survive a motion to dismiss on the basis of qualified immunity, Plaintiff must plausibly allege that Trooper Guiliano himself with "reckless disregard for the truth, made a false statement in his affidavit." *Id.*  Plaintiff does not identify any false statement by Trooper Guiliano and the Arrest Warrant Application makes plain that he submitted Ms. Semexant-Coffy's own statement and those of two corroborating witnesses.  Although the allegations may have been discredited later, a neutral judge determined that it provided probable cause for Mr. Cayo's arrest at that time.[11]  As Plaintiff has not plausibly alleged that Defendant Guiliano

---

[11] Contrary to Plaintiff's argument, an alleged victim's statement can be sufficient on its own to furnish probable cause. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.").  Even "where a police officer was presented with different stories from an alleged victim and the arrestee . . . he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest" and he "does not have to prove plaintiff's version wrong before arresting him" even if "investigation might have cast doubt upon the basis for the arrest." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal quotation marks omitted).  The justification is that an officer's "function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence" and once "officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury."

"materially misled a magistrate," *Golino*, 950 F.2d at 87, Defendant Guiliano's Motion to Dismiss is granted on the basis of qualified immunity.

**III.    Conclusion**

For the reasons set forth above, Defendants' motions [Doc. # 41, 44] to dismiss are GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of July, 2014.

---

*Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) (quoting *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir. 1989)).